**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TINA MARIE ANDREWS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. H-06-855** |
| **HOUSTON POLICE OFFICER JUSTIN** | § | |
| **H. KENNEDY, HOUSTON POLICE** | § | |
| **DEPARTMENT, AND CITY OF** | § | |
| **HOUSTON,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant City of Houston and Defendant Justin H. Kennedy's Amended Motion for Summary Judgment and Motion to Dismiss Houston Police Department. After considering the parties' filings and the applicable law, the Court finds that the motion, Docket No. 27, should be and hereby is **GRANTED IN PART, DENIED IN PART**.

## I. BACKGROUND

This civil rights action arises from Defendant Kennedy's arrest of Plaintiff for interfering with his duties as a peace officer.

Plaintiff Tina Andrews is a licensed attorney in Texas. On February 18, 2005, Andrews paid a visit to two clients (Donna Matherne and Jeff Price) at their apartment in Houston. The parties disagree sharply on almost all other material facts. According to Andrews's version of events, while she was at the apartment, Defendant Kennedy, a Houston police officer, knocked on the door and was admitted into the residence. According to Plaintiff, Kennedy was advised that Andrews represented Matherne and

1

Price.  Kennedy did not specify the purpose of his visit, but began questioning Matherne outside the front door of the apartment.  Andrews went to the door, again advised Kennedy that she was an attorney, and asked him what was going on.  Kennedy did not respond to Andrews' inquiries, but became verbally abusive.  When Andrews asked why he was acting in that manner, Kennedy again responded harshly, and grew increasingly aggressive.  Andrews indicated that she would call someone regarding Kennedy's behavior and retreated into the apartment to use her cell phone, which was lying on a table.  Defendant Kennedy followed her, took the phone from her hand and threw it across the room, grabbed Andrews and pushed her up against a wall, then removed her from the residence.  Kennedy handcuffed Andrews and placed her in his police vehicle, then eventually took her to the City Jail.  Andrews was booked, fingerprinted, charged with unlawfully interfering with a police investigation, and required to post bond before she was released.  The case against Andrews was ultimately dismissed.

Defendant Kennedy's version of events, recounted in Defendants' motion for summary judgment and in Kennedy's affidavit (Defs.' Mot. Summ. J., Ex. A) differs significantly from Plaintiff's.  According to Kennedy, he had been dispatched to the apartment to investigate an "assault in progress" call that had been received from a third party.  When Kennedy arrived at the apartment, Price answered the door and Andrews was sitting inside.  Price stated that nothing was wrong, but in Kennedy's judgment, he appeared upset.  Kennedy asked to speak with Matherne, who called from inside the apartment that she was coming to the door.

Before Matherne got there, Andrews approached Kennedy and asked what was going on.  Matherne appeared and affirmed that everything was fine.  Kennedy asked

Matherne to step outside the apartment and speak privately with him, and she did so willingly.   However, their conversation was repeatedly interrupted by Andrews, who opened the front door and asked several times what was happening.   Kennedy instructed Andrews more than once to return to the apartment to allow him to finish his interview, but she persisted in her interruptions.   After yet another exchange, Kennedy attempted to close the apartment door behind Andrews, but she wedged her foot in the door and stepped forcefully towards him, again demanding to know what was going on.

At this point, Defendant Kennedy decided that it would be necessary to restrain Andrews in order to complete his investigation.   Kennedy followed Andrews into the apartment and saw her reach into her purse.   Not knowing what she was going to retrieve (and in case she was reaching for a weapon), Kennedy grabbed both her arm and the bag, then took her into custody.   Only then did Price inform Kennedy that Andrews was his attorney for a child custody matter, and that he had just met her.

Plaintiff filed suit in state court against Kennedy, the City of Houston, and the Houston Police Department.   The case was removed in March 2006.   Although the complaint is somewhat unclear, it appears to assert state (under the Texas Tort Claims Act) and federal law (under 42 U.S.C. § 1983) claims against all Defendants.   Plaintiff brings claims against Kennedy for malicious prosecution, false imprisonment, false arrest, intentional infliction of emotional distress, and libel and slander, and invokes the doctrine of *respondeat superior* against the Houston Police Department and the City of Houston.   Plaintiff alleges that the HPD and City of Houston were negligent and grossly negligent in failing to develop appropriate guidelines and policies and inadequately screening officers.   Plaintiff seeks compensatory and punitive damages in the amount of

$500,000 each for past and future medical expenses, past and future pain and suffering, mental and emotional anguish, and reputational harm.  Plaintiff also seeks attorney's fees.

Defendants Kennedy and City of Houston now move for summary judgment on all claims asserted against them, and to dismiss the Houston Police Department.

## II.  ANALYSIS

### A.  Motion to Dismiss Houston Police Department

Defendants move to dismiss the Houston Police Department on the ground that, as a subdivision of the City of Houston, the HPD is not a separate legal entity that may be sued.  The Court agrees that the HPD may not be sued, as there is no indication that it possesses a legal identity distinct from that of the City.  *See, e.g.*, *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) (holding that "[i]n order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence,'" and finding that Plaintiff failed to show that Defendant had been granted the capacity to engage in separate litigation) (internal citation omitted).  Therefore, Plaintiff's claims against the Houston Police Department must be dismissed.

### B.  Summary Judgment

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).  A

genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp*., 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Id*.

### 1.  State law claims

Plaintiff has asserted state law claims against Defendant Kennedy for malicious prosecution, false arrest, false imprisonment, intentional infliction of emotional distress, and libel and slander.  Plaintiff asserts that Defendant City of Houston is liable under the doctrine of *respondeat superior* for these violations, and also brings separate state law negligence and gross negligence claims against the City.[1]  Defendants Kennedy and City of Houston argue that Plaintiff's state law claims must be dismissed for failure to comply with relevant notice requirements.

According to Defendants, Plaintiff was obligated to provide timely notice to the City of her claims for damages under two separate provisions.  First, the Texas Tort Claims Act requires that a governmental unit "receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred."  TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) (Vernon 2007). Therefore, Plaintiff should have notified the City of her claims (describing the damage or injury, the time and place of the incident, and the incident herself) by August 18, 2005.

Second, the Texas Tort Claims Act provides that "[a] city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved."  *Id.* at § 101.101(b).  The City of Houston charter requires an injured person

---

[1] It is not clear from the complaint which causes of action are brought under state law and which are meant to trigger liability under Section 1983.  Giving the benefit of the doubt to Plaintiff, however, the Court assumes that all claims are intended to be asserted under both state law and Section 1983.

to give "notice in writing of such injury or destruction, duly verified, within ninety days after the same has been sustained" before the City may be held liable. Defs.' Mot. Summ J., Ex. F. The Texas Supreme Court has "consistently recognized that compliance with such charter provisions is mandatory and that timely filing of a written notice of claim is a condition precedent to maintenance of a suit against a city for injuries." *City of Houston v. Torres*, 621 S.W.2d 588, 590 (Tex. 1981) (holding that plaintiff was not excused from giving notice to city as required by city charter, "in absence of which his claim was barred," and citing cases). Defendants have submitted uncontroverted evidence that Plaintiff first notified the city of her claims, in the form of a sworn affidavit, in January 2006, well past either the 90-day or six-month notice periods. Defs.' Mot. Summ. J., Ex E. Because timely notice was not provided to the City, all of Plaintiff's state law claims against Defendants Kennedy and City of Houston should be dismissed, and summary judgment granted to Defendants on same.

### 2. Section 1983 claims

#### a. Defendant City of Houston

Plaintiff claims that Defendant City of Houston is liable under 42 U.S.C. § 1983 for failing to provide police officers with appropriate guidelines, policies, and procedures, and for inadequately screening officers who "would have a propensity for abusing his/her authority." Pl.'s Compl. 6. Defendant City of Houston argues that it is entitled to summary judgment on these claims because Plaintiff has failed to produce any evidence showing that her alleged injuries were caused by a municipal policy or practice.

A municipality may be held liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A municipality may not be liable under Section 1983 based on the doctrine of *respondeat superior*; there must be a direct causal link between a government policy or custom and the injury suffered by a plaintiff.  *Id.* at 691.  Plaintiff's complaint does not identify any particular policy or custom that she alleges caused her injury at the hands of Defendant Kennedy.  Further, Plaintiff has submitted absolutely no evidence suggesting that any such policy or custom exists.   Therefore, summary judgment is granted to Defendant City of Houston on Plaintiff's Section 1983 claims.

### b.  Defendant Kennedy

The only remaining claims are those asserted against Defendant Kennedy under Section 1983.  Although Plaintiff's complaint does not identify which of her claims are intended to give rise to a Section 1983 cause of action, *see supra* note 1, the Court will assume that Plaintiff asserts liability for false imprisonment and false arrest, both of which have been held to be actionable under Section 1983.  *See, e.g.*, *Haggerty v. Tex. S. Univ.*, 391 F.3d 653 (5th Cir. 2004) (analyzing a Section 1983 claim based on false arrest and imprisonment).   However, a plaintiff may not bring a Section 1983 claim for intentional infliction of emotional distress or libel/slander.  *See, e.g.*, *Dibrell v. Huber*, No. Civ.A.H-04-4854, 2006 WL 14570, at *4 (S.D. Tex. Jan. 3, 2006) ("a claim of intentional infliction of emotional distress . . . cannot form the basis of a § 1983 action because there is no constitutionally protected interest at stake.") (internal quotation marks omitted); *accord Voyticky v. Village of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005) ("[I]ntentional infliction of emotional distress, by itself, cannot amount to a constitutional

violation . . . We have not . . . ever held that intentional infliction of emotional distress, by itself, amounts to a cognizable constitutional claim remediable pursuant to 42 U.S.C. § 1983 . . .”); *Waddleton v. Blalock*, No. 01-40264, 2001 WL 1485851, at *1 (5th Cir. Nov. 16, 2001) (“under the law of this circuit, claims involving slander and libel are state law matters which are not cognizable in a 42 U.S.C. § 1983 action.”) (citing *Geter v. Fortenberry*, 849 F.2d 1550, 1556 (5th Cir. 1988)).

The Fifth Circuit has also clarified that “no . . . freestanding constitutional right to be free from malicious prosecution exists.” *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). Although “[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example . . . they are not claims for malicious prosecution and labeling them as such only invites confusion.” *Id.* at 953-54. To bring a Section 1983 claim, a plaintiff may not simply make out the elements of the state tort of malicious prosecution; rather, she must state a claim under the Fourth Amendment directly. *Izen v. Catalina*, 398 F.3d 363, 366-67 (5th Cir. 2005). Plaintiff Andrews has not directly stated a Fourth Amendment claim arising from wrongful prosecution. Therefore, to the extent that Plaintiff seeks to impose liability under Section 1983 for malicious prosecution, that claim must be dismissed. *Id.*

With respect to the allegations of false arrest and imprisonment, Defendant Kennedy argues first that he is entitled to qualified immunity from those claims. In assessing Kennedy’s qualified immunity defense, the Court asks two questions: 1) whether Andrews has alleged a violation of a constitutional right, and 2) whether Kennedy’s conduct was objectively reasonable in light of clearly established law at the

time the challenged conduct occurred.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).  "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."  *Haggerty*, 391 F.3d at 655 (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997)).

In asserting that Defendant Kennedy wrongfully arrested and imprisoned her, Plaintiff has alleged violations of constitutional rights that were clearly established at the time of the incident.  *See, e.g.*, *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998) ("Sorensen charges that the officers violated her right to be free from illegal arrest, as secured by the Fourth and Fourteenth Amendments.  This is a clearly established constitutional right."); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right.").[2]  The Court must then ask whether, when viewing the facts in the light most favorable to Plaintiff, Defendant Kennedy's actions were objectively reasonable.

The reasonableness of Kennedy's conduct hinges on whether he had probable cause to arrest Andrews.  In a case addressing similar facts (a plaintiff asserting a Section 1983 claim after he was arrested for interference with a peace officer), the Fifth Circuit opined that "[t]o ultimately prevail on his section 1983 false arrest/false imprisonment claim, [Plaintiff] must show that [Defendant] did not have probable cause to arrest him." *Haggerty*, 391 F.3d at 655.  Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient

---

[2] Section 1983 claims for false arrest and false imprisonment are generally treated together, as both turn on whether the arresting officer had probable cause. *See, e.g.*, *Haggerty*, 391 F.3d at 653.

for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* at 655-56. Therefore, "[Defendant] is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [Defendant] was aware, there was a fair probability that [Plaintiff] had committed or was committing an offense." *Id.* at 656. Even a police officer who mistakenly concludes that probable cause was present may be entitled to qualified immunity, as long as the conclusion was reasonable. *Mangieri*, 29 F.3d at 1017.

In performing the reasonableness analysis, the *Haggerty* Court looked to the statute under which the defendant officer arrested the plaintiff, which is the same statute at issue in this case. Texas Penal Code Section 38.15(a)(1) states that "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE ANN. § 38.15(a)(1) (Vernon 2007). However, "[i]t is a defense to prosecution . . . that the interruption, disruption, impediment, or interference alleged consisted of speech only." *Id.* at § 38.15(d). If Defendant Kennedy reasonably believed that, in light of the totality of the circumstances, there was a fair probability that Plaintiff was interfering with his investigation in violation of Section 38.15, he is entitled to qualified immunity.

The Court finds that when viewing the (disputed) facts in the light most favorable to Plaintiff, Defendant Kennedy did not have probable cause to arrest Andrews for violating Section 38.15, nor could he reasonably have concluded that probable cause existed. According to Andrews's account of the incident, she did not disrupt Kennedy's

performance of his duties with anything other than speech; she did nothing more than speak to the officer to ascertain what was going on, and to ask him why he was reacting so aggressively to her.   Further, Andrews' speech was non-threatening – she did not yell or shout at Kennedy – and intended only to gather information in her capacity as an attorney, not to impede Kennedy's investigation.   After Kennedy became aggressive and abusive, Andrews backed off.  She advised Kennedy that she was going to call someone not about his investigation, but about his behavior towards her.   At that point, Kennedy followed her back into the apartment as she was retrieving her cell phone from a table (not from inside her purse), threw the phone across the room, and forcefully restrained her.

These alleged facts distinguish Andrews from the plaintiff in *Haggerty*, who, in a tense situation involving a group of alleged attackers and a gathering crowd, affirmatively moved towards the defendant officer and loudly told him to stop, after having been previously told to "step back."   *Haggerty*, 391 F.3d at 657.  *See also Huang v. Harris County*, No. 00-20806, 2001 WL 822534, at *7 (5th Cir., June 22, 2001) (plaintiff's admission that she closed a gate, purposely impeding an officer's access to her son, constituted probable cause for her arrest under Section 38.15).  Andrews's account of events is adequately supported by excerpts from her deposition (Defs.' Mot. Summ. J., Ex. D), Plaintiff's sworn affidavit from January 2006 (Defs.' Mot. Summ. J., Ex. E), and a sworn affidavit by Donna Matherne (Pl.'s Resp., Ex. A).

The Court concludes that Andrews has offered evidence sufficient to create a genuine issue of material fact as to whether Kennedy's conduct was objectively unreasonable in light of clearly established laws.  *See Tarver*, 410 F.3d at 752-53

(holding that plaintiff had submitted sufficient summary judgment evidence to create a fact issue as to whether officer's conduct was objectively unreasonable).  While a fact finder may ultimately determine that Defendant Kennedy's account of events is more credible, "this decision should not be made at the summary judgment stage."  *Id.* at 753. Defendant Kennedy is not entitled to summary judgment based on qualified immunity from Plaintiff's Section 1983 claim.

The Court also denies summary judgment to Defendant Kennedy on the ground that Plaintiff has failed to state a cause of action under Section 1983.  As discussed above, "[t]o ultimately prevail on his section 1983 false arrest/false imprisonment claim, [Plaintiff] must show that [Defendant] did not have probable cause to arrest [her]." *Haggerty*, 391 F.3d at 655.  Plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether Defendant Kennedy had probable cause to arrest her.[3]

The Court wishes again to emphasize that, in denying summary judgment to Defendant Kennedy on these claims, it is accepting as true Plaintiff's version of the facts. This approach is in accord with well-established requirements for summary judgment motions.  No such presumption, of course, and none like it will pertain at trial.  Accepting Plaintiff's account of events at this phase has no import at all for the trial phase.

### III. CONCLUSION

Defendants' Motion for Summary Judgment and to Dismiss is hereby **GRANTED IN PART, DENIED IN PART.**  Plaintiff's claims against Defendants Houston Police Department and City of Houston are **DISMISSED WITH**

---

[3] As a final note, both sides introduced statements by "expert witnesses" who opined on the issues of probable cause and the reasonableness of Defendant Kennedy's conduct.  These are legal (albeit fact-specific) questions that courts regularly address in assessing qualified immunity defenses, and the Court sees no reason to substitute "expert" judgments for its own.  Therefore, the Court has disregarded these submissions.

**PREJUDICE.**  Plaintiff's state law claims against Defendant Kennedy are **DISMISSED WITH PREJUDICE.**   Summary judgment is **DENIED** to Defendant Kennedy on Plaintiff's Section 1983 claims arising from allegations of false arrest and false imprisonment.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 14th day of June, 2007.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**